UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHARLES ROBINSON AND SONYA ROBINSON** § § § *Plaintiffs,* § **VS.** § § **UNITED PROPERTY & CASUALTY INSURANCE COMPANY** § § § *Defendant.* § | Civil Action No.: 2:23-cv-00397 Judge: Magistrate: |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

PLAINTIFFS CHARLES ROBINSON and SONYA ROBINSON ("PLAINTIFFS"), through undersigned counsel, file this Original Complaint against Defendant, UNITED PROPERTY & CASUALTY INSURANCE COMPANY ("UPC") and, in support of the causes of action asserted herein, respectfully set forth as follows:

### I. PARTIES

1) Made Plaintiffs herein are CHARLES ROBINSON and SONYA ROBINSON, persons of the age of majority, residing in and domiciled in St. Charles Parish, Louisiana.

2) Made Defendant herein is UNITED PROPERTY & CASUALTY INSURANCE COMPANY ("UPC") a foreign insurer incorporated under the laws of the State of Florida, with its principal place of business located at 800 2nd Ave South, St. Petersburg, FL 3370, and authorized to do and doing business in St. Charles Parish and the State of Louisiana. Defendant may be served with process through its registered agent for service: **Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809**

## II. JURISDICTION AND VENUE

3) Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. §§ 1332 and 1441 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds the minimum jurisdictional amount.

4) Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District; Plaintiffs reside in this District and the properties that are the subject of the dispute between Plaintiffs and UPC are located in this District.

## III. FACTUAL BASIS

5) At all times relevant hereto, Plaintiffs owned properties located at 309 Riverwood Dr., Saint Rose, LA 70087 (the "309 Riverwood Property") and the property located at 107 S. Pin Oak Dr., Saint Rose, LA 70087 (the "107 Pin Oak Property"). Both properties are situated in St. Charles Parish, Louisiana.

6) On or about August 29, 2021, Hurricane Ida made landfall in Terrebonne Parish, Louisiana, as a Category 4 hurricane, causing catastrophic damage across the Gulf coast, including both of Plaintiffs' properties in St. Charles Parish.

### A. 309 Riverwood Property

7) At all times relevant hereto, UPC provided a policy of insurance bearing policy number ULH 55981460517 (the "Riverwood Policy") to Plaintiffs which covered the 309 Riverwood Property against perils including hurricanes/windstorms, providing the following coverages: 1) $324,000 for dwelling, 2) $32,400 for other structures, 3) $81,000 for contents and personal property, and 4) $32,400 for additional living expenses and loss of use, *inter alia.*

8) As a result of the storm, the 309 Riverwood Property sustained substantial structural and exterior damage, as well as damage to the interior and its contents, specifically including:

water intrusion through the roof resulting in water damage throughout the entire home including, but not limited to, the home's ceilings, walls, insulation, and flooring.

9) The extensive damage rendered the Property necessitated massive repairs, as well as additional living expenses and costs of mitigation and debris removal.

10) Upon discovering the damage, Plaintiffs promptly filed a claim with UPC, who assigned claim number 21LA00126422, and in compliance with the Riverwood Policy, Plaintiffs began mitigating the loss as quickly as possible.

11) On September 23, 2021, Defendant inspected the Property and documented damages to the dwelling and other structures. The inspection was brief and failed to document the full scope of damages resulting in an estimate grossly underreporting the extent of damage.

12) The inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

13) After over-depreciating the loss and applying the Riverwood Policy's deductible, Defendant issued benefits of $43,507.03.

14) Upon realizing that Defendant would not adjust their claim fairly or accurately, Plaintiffs retained the independent adjusters of ATA Loss Consulting to inspect the Property, document their findings, and generate an estimate of damages.

15) On November 11, 2021, the independent adjusters of ATA Loss Consulting inspected the Property and documented damages of $147,384.98 to the dwelling and $15,629.86 to other structures.

16) On January 10, 2022, a demand for release of unconditional tenders was submitted to the Defendant, along with a copy of the estimate generated by ATA Loss Consulting, demonstrating the losses documented.

17) Despite receiving this proof of loss, Defendant has yet to tender adequate insurance

proceeds pursuant to its contractual obligation.

18) Defendant has failed and refused to evaluate the information and surrounding facts regarding Plaintiffs' covered claim, choosing instead to rely entirely on the incorrect assumptions and conclusions of its agents, employees, or consultants.

19) Defendant has persisted in refusing to pay the full amount due for Plaintiffs' claim. No reasonable basis exists or has existed at any time for Defendant's delay and/or refusal to provide covered benefits due and owing under the Riverwood Policy.

20) Defendant's failure to comply with the terms of its policy caused and continues to cause significant delay to repair of the Property.

21) At all times relevant hereto, Plaintiffs have complied with their obligations pursuant to the insurance agreement, including payment of all premiums due under the policy, giving prompt notice to their insurer, providing a description of the facts of the loss, taking reasonable steps to protect the covered residence, permitting the inspection of the residence by the insurer, and cooperating with the insurer during the investigation of the claim.

22) Upon information and belief, Defendant purposefully and/or negligently failed to timely tender proceeded due to Plaintiffs after having received satisfactory proof of loss.

23) Upon information and belief, Defendant purposefully and/or negligently misrepresented to Plaintiffs the terms and conditions of the Riverwood Policy.

24) Upon information and belief, Defendant conducted the investigation and claims handling for Plaintiffs in bad faith, as that term is term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

25) Upon information and belief, Defendant manipulated its pricing software to artificially suppress the cost of repairs below market value and over depreciated Plaintiffs' losses.

26) Upon information and belief, Defendant purposefully, or at least negligently, failed to

include adequate overhead and profit in its estimates of damages.

27) Plaintiffs have incurred additional expenses in making repairs because Defendant failed to timely compensate Plaintiffs for their losses under the Riverwood Policy.

28) Plaintiffs have incurred professional expenses, including expert and/or attorneys' fees, to deterring that the Defendant wrongfully failed to adequately/timely pay Plaintiffs' claims under the Riverwood Policy.

29) Plaintiffs have incurred or may incur additional living expenses as a result of the damages caused to the Property.

30) At and during the time of the acts and/or omissions complained of herein, and acts and /or omissions committed by an agent, representative, or employee of Defendants, occurred within the scope of the actual or apparent authority of such person on behalf of said Defendants. Said Defendant is therefore liable to Plaintiffs for the acts and or omissions of any such agent, representative, or employee complains of herein by virtue of such agency relationship.

### B. 107 Pin Oak Property

31) At all times relevant hereto, UPC provided a policy of insurance bearing policy number ULH 50046290417 (the "Pin Oak Policy") to Plaintiffs which covered the 107 Pin Oak Property against perils including hurricanes/windstorms, providing the following coverages: 1) $206,000 for dwelling, 2) $20,600 for other structures, and 3) $20,600.00 for additional living expenses and loss of use, *inter alia.*

32) As a result of the storm, the 107 Pin Oak Property sustained substantial structural and exterior damage, as well as damage to the interior, specifically including: water intrusion through the roof resulting in water damage throughout the entire home including, but not limited to, the home's ceilings, walls, insulation, and flooring.

33) The extensive damage rendered the Property necessitated massive repairs, as well as

additional living expenses and costs of mitigation and debris removal.

34) Upon discovering the damage, Plaintiffs promptly filed a claim with UPC, who assigned claim number 21LA00126491, and in compliance with the Pin Oak Policy, Plaintiffs began mitigating the loss as quickly as possible.

35) On September 19, 2021, Defendant inspected the Property and documented damages to the dwelling and other structures. The inspection was brief and failed to document the full scope of damages resulting in an estimate grossly underreporting the extent of damage.

36) The inspection of the Property constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

37) After over-depreciating the loss and applying the Pin Oak Policy's deductible, Defendant issued benefits in the amount of $31,906.90.

38) Upon realizing that Defendant would not adjust their claim fairly or accurately, Plaintiffs retained the independent adjusters of ATA Loss Consulting to inspect the Property, document their findings, and generate an estimate of damages.

39) On November 11, 2021, the independent adjusters of ATA Loss Consulting inspected the Property and documented damages of $152,697.37 to the dwelling and $10,361.71 to other structures.

40) On January 27, 2022, a demand for release of unconditional tenders was submitted to the Defendant, along with a copy of the estimate generated by ATA Loss Consulting, demonstrating the losses documented.

41) Despite receiving this proof of loss, Defendant has yet to tender adequate insurance proceeds pursuant to its contractual obligation.

42) Defendant has failed and refused to evaluate the information and surrounding facts regarding Plaintiffs' covered claim, choosing instead to rely entirely on the incorrect assumptions

and conclusions of its agents, employees, or consultants.

43) Defendant has persisted in refusing to pay the full amount due for Plaintiffs' claim. No reasonable basis exists or has existed at any time for Defendant's delay and/or refusal to provide covered benefits due and owing under the Pin Oak Policy.

44) Defendant's failure to comply with the terms of its own policy caused and continues to cause significant delay to repair of the Property.

45) At all times relevant hereto, Plaintiffs have complied with their obligations pursuant to the insurance agreement, including payment of all premiums due under the policy, giving prompt notice to their insurer, providing a description of the facts of the loss, taking reasonable steps to protect the covered residence, permitting the inspection of the residence by the insurer, and cooperating with the insurer during the investigation of the claim.

46) Upon information and belief, Defendant purposefully and/or negligently failed to timely tender proceeded due to Plaintiffs after having received satisfactory proof of loss.

47) Upon information and belief, Defendant purposefully and/or negligently misrepresented to Plaintiffs the terms and conditions of the Pin Oak Policy.

48) Upon information and belief, Defendant conducted the investigation and claims handling for Plaintiffs in bad faith, as that term is term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

49) Upon information and belief, Defendant manipulated its pricing software to artificially suppress the cost of repairs below market value and over depreciated Plaintiffs' losses.

50) Upon information and belief, Defendant purposefully, or at least negligently, failed to include adequate overhead and profit in its estimates of damages.

51) Plaintiffs have incurred additional expenses in making repairs because Defendant failed to timely compensate Plaintiffs for their losses under the Pin Oak Policy.

52)     Plaintiffs have incurred professional expenses, including expert and/or attorneys' fees, to deterring that the Defendant wrongfully failed to adequately/timely pay Plaintiffs' claims under the Pin Oak Policy.

53)     Plaintiffs have incurred or may incur additional living expenses as a result of the damages caused to the Property.

54)     At and during the time of the acts and/or omissions complained of herein, and acts and /or omissions committed by an agent, representative, or employee of Defendants, occurred within the scope of the actual or apparent authority of such person on behalf of said Defendants. Said Defendant is therefore liable to Plaintiffs for the acts and or omissions of any such agent, representative, or employee complains of herein by virtue of such agency relationship.

## IV.  CAUSES OF ACTION

### A.  Breach of Contract

55)     Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth in the paragraphs 1-54, above as if restated herein.

56)     Defendant owes a duty to its policy holder to make prompt and proper payment for all claims, to make its policy limits available to insureds for losses. These duties arise from the policy itself, Louisiana jurisprudence, and duties implied in every contract in Louisiana.

57)     Defendant, by and through its adjusters, representatives, agents, servants, and employees, have breached the contract of insurance with Plaintiffs in the following non-exclusive respects:

   (a) By failing to indemnify its insured, and by relying upon a policy exclusion to deny payment which is, and should be inapplicable given the circumstances of the claim;

   (b) By failing to pay all benefits available and improperly interpreting the Policy so as to attempt to avoid obligations imposed by the Policy and Louisiana law;

   (c) By denying payment on Plaintiffs' claim without meeting its affirmative burden of proving by a preponderance of evidence that Plaintiffs' loss were proximately

    caused by non-covered peril or a peril excluded by the policy;

(d) By failing to meet its affirmative burden of establishing which part of Plaintiffs' loss was caused by an excluded peril;

(e) By improperly shifting the burden to Plaintiffs of proving that their loss was not excluded by the policy;

(f) By failing to conclusively, and objectively determine the proximate and efficient cause of loss;

(g) By failing to retain the appropriate experts and/or consultants to evaluate the damages to the subject property and/or disregarding evidence from experts and/or consultants retained by Plaintiffs;

(h) By basing its failure to tender payment upon a nonobjective and scientifically unreliable engineering report;

(i) By negligently, grossly negligently, recklessly, and/or intentionally choosing not to conduct a full, fair and prompt investigation and adjustment regarding Plaintiffs' insured losses;

(j) By basing its failure to tender payment based on an inadequate investigation, inspection, and adjustment of Plaintiffs' loss;

(k) By basing its failure to tender payment based on an investigation and adjustment by an adjuster unqualified to determine the proximate cause of loss unqualified adjuster;

(l) By failing to construe the policy in favor of coverage for Plaintiffs' insured loss;

(m) By choosing to delay and withhold payment of Plaintiffs' covered losses, thereby proximately causing Plaintiffs to incur consequential damages, including: additional repair costs, expert fees, attorney fees, and litigation expenses.

58) As a result of these breaches of its insurance contract, Plaintiffs have been unable to make necessary repairs to return the property to its pre-loss condition due to extensive damages and have lost the benefit of the use of the insured home, all of which entitles Plaintiffs to recover actual, compensatory, and consequential damages, with interest, costs of this action, and other equitable relief.

### B. Breach of Duty of Good Faith and Fair Dealing Under La. R.S. 22:1973

59) Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth in the

paragraphs 1-58, above as if restated herein.

60) Defendant has a duty of good faith and fair dealing which imposes on the insurer "an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured." LA. R.S. § 22:1973(A)

61) Defendant has breached its duty of good faith and fair dealing in the following non-exclusive respects:

(a) By unjustifiably denying insurance coverage for Plaintiffs' covered loss;

(b) By denying payment on Plaintiffs' claim without meeting its affirmative burden of proving by a preponderance of evidence that Plaintiffs' loss were proximately caused by non-covered peril or a peril excluded by the policy;

(c) By failing to meet its affirmative burden of establishing which part of Plaintiffs' loss was caused by an excluded peril;

(d) By improperly shifting the burden to Plaintiffs of proving that their loss was not excluded by the policy;

(e) By failing to conclusively, and objectively determine the proximate and efficient cause of loss;

(f) By failing to retain the appropriate experts and/or consultants to evaluate the damages to the subject property and/or disregarding evidence from experts and/or consultants retained by Plaintiffs;

(g) By basing its failure to tender payment upon a nonobjective and scientifically unreliable engineering report;

(h) By negligently, grossly negligently, recklessly, and/or intentionally choosing not to conduct a full, fair and prompt investigation and adjustment regarding Plaintiffs' insured losses;

(i) By basing its failure to tender payment based on an inadequate investigation, inspection, and adjustment of Plaintiffs' loss;

(j) By basing its failure to tender payment based on an investigation and adjustment by an adjuster unqualified to determine the proximate cause of loss unqualified adjuster;

(k) By failing to construe the policy in favor of coverage for Plaintiffs' insured loss;

62) Defendant's breaches of its duty of good faith and fair dealing have proximately

caused Plaintiffs to incur consequential damages including ongoing repairs, costs of remediation, retaining experts, thus entitling Plaintiffs to actual, compensatory, and general damages.

63) Plaintiffs are further entitled to have penalties assessed against Defendants pursuant to La. R.S. 22:1973(C) for unjustifiably delaying and/or withholding payment.

### C. **Breach of Statutory Duty and Penalties Under La. R.S. 22:1892(B)(1) (2019)**

64) Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth in the paragraphs 1-63, above as if restated herein.

65) Defendant has a statutory duty of good faith set forth under La. R.S. 22:1892(A)(4) requiring a written offer to settle any property damage claim with thirty days of receiving satisfactory proof of loss. Similarly, 22:1973(B)(5) requires payment within sixty days of satisfactory proof of loss submitted by Plaintiffs (the insured). "Satisfactory proof of loss" merely requires "sufficient information to act on the claim, the manner in which it obtains the information is immaterial." *Sevier v. U.S. Fid. & Guar. Co.,* 497 So.2d 1380, 1384 (La.1986).

66) Defendant has breached its statutory duties under La. R.S. 22:1892(A)(4) and La. R.S. 22:1973(B)(5), in the following non-exclusive respects:

   (a) by intentionally denying and withhold payments for Plaintiffs' covered losses well in excess of thirty days after receipt of satisfactory proof of loss, acting in a manner that was arbitrary, capricious and/or without probable cause;

   (b) by failing to make timely tender and/or adequate payment after receiving satisfactory proof of loss by way of its own inspections of the Property, as well as independent proofs of loss from estimates generated by Plaintiffs' experts, and formal demand letters;

   (c) by failing to make timely tender of undisputed funds after receiving satisfactory proof of loss by way of its own inspections of the Property, as well as independent proofs of loss from estimates generated by Plaintiffs' experts;

   (d) by intentionally refusing to communicate with Plaintiffs and his representatives regarding the status of loss adjustment, the nature of any coverage dispute or disagreement regarding damages or valuation, or make any effort to settle the claim;

 (e) by intentionally refusing to make payment within sixty days of receipt of proof of loss, acting in a manner that is arbitrary, capricious and/or without probable cause, in violation of La. R.S. 22:1973(B)(5).

67) As a result of Defendant's unjustifiable breach of its statutory duties under 22:1892(A)(4) and La. R.S. 22:1973(B)(5), Plaintiffs have incurred actual, consequential damages including ongoing repairs, costs of remediation, retaining experts, thus entitling Plaintiffs to actual, compensatory, and general damages.

68) Defendant's breach of its statutory duty is arbitrary, capricious, and without probable cause, thus Plaintiffs is further entitled to have penalties assessed against Defendants pursuant to La. R.S. 1892(B)(1).

## V. DAMAGES

69) Plaintiffs reallege and re-aver the allegations contained in Paragraphs 1-68, above, as if restated herein.

70) Plaintiffs show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiffs.

71) As a result of the actions of Defendant described herein, Plaintiffs are entitled to recover the following nonexclusive damages:

 (a) Actual costs of repairs and remediation;

 (b) Diminution of the value to the Property;

 (c) Reimbursement for personal repairs of the Property;

 (d) Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

 (e) Additional living expenses;

 (f) Emergency and temporary repair expenses,

 (g) Loss of Use;

(h) Mental anguish and emotional distress;

(i) Actual, compensatory, and general damages proximately caused by Defendant's breaches of duties and breaches of contract;

(j) General, special, and punitive damages under LA. R.S. §22:1973 and §22:1892(B);

(k) Reasonable attorney's fees and costs pursuant to LA. R.S. § 22:1892 (B);

(l) Costs of prosecution of this action and judicial interest of all damages from the date of judicial demand until paid;

(m) Cost of retaining expert witnesses including, but not limited to: public adjusters, appraisers, engineers, or other consultants; and

(n) All other losses that will be proven through discovery or at the trial of this matter.

## VI.   JURY DEMAND

72) Plaintiffs request a trial by jury for all issues so triable.

## VII. PRAYER

WHEREFORE, Plaintiffs, CHARLES ROBINSON AND SONYA ROBINSON, pray that Defendant, UNITED PROPERTY & CASUALTY INSURANCE COMPANY, be served with a copy of this Complaint and be duly cited to appear and answer the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Plaintiffs, CHARLES ROBINSON AND SONYA ROBINSON, and against Defendant, UNITED PROPERTY & CASUALTY INSURANCE COMPANY, in an amount that will fully and fairly compensate Plaintiffs pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

RESPECTFULLY SUBMITTED:

*/s Sophia J. Johnson*_____
SOPHIA J. JOHNSON, LSBA# 33205
GALEN M. HAIR, LSBA # 32865
**HAIR SHUNNARAH TRIAL ATTORNEYS, LLC
d/b/a INSURANCE CLAIM HQ
d/b/a INSURANCE CLAIM LAWYERS, INC.**
3540 S. I-10 Service Rd. W., Ste. 300
Metairie, LA 70001
TELEPHONE: (504) 684-5200
FACSIMILE: (504) 613-6351
E-MAIL:  johnson@hairshunnarah.com

**PLEASE SERVE WITH SUMMONS AND COMPLAINT:**

UNITED PROPERTY & CASUALTY INSURANCE COMPANY
*Via Registered Agent for Service of Process*
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, LA 70809